RENDERED:  MAY 16, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1196-MR

EVANGELINE NEWTON                                      APPELLANT

v.                 APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE A. CHRISTINE WARD, JUDGE
ACTION NO. 21-CI-503464

BYRON NEWTON                                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND TAYLOR, JUDGES.

ACREE, JUDGE:  Evangeline Newton, *pro se*, appeals the Jefferson Circuit Court, Family Court Division's September 5, 2024 Order finding her in contempt for failing to abide by the parenting schedule.  We affirm.

The parties share joint custody of a minor child, T.N.  The family court previously found Evangeline in contempt for failing to abide by the parenting schedule by order of record entered July 20, 2023.  Evangeline appealed, and we

affirmed. *Newton v. Newton*, No. 2023-CA-0940-MR, 2024 WL 4310856 (Ky. App. Sep. 27, 2024).

However, while that appeal was pending, Byron filed a new motion for contempt in April 2024. (Record (R.) 292). He alleged Evangeline was not following the parenting schedule and filed a document listing various dates in 2024 indicating tardy exchanges and no-shows. (R. 294). The dates listed were: January 3 (tardy), January 10 (tardy), January 25 (tardy), January 31 (no-show), February 7 (tardy), February 21 (tardy), February 28 (no-show), March 1 (tardy), and March 6 (tardy).

In a June 2024 filing, Evangeline did not dispute her failure to follow the parenting schedule, but instead offered a myriad of justifications. (R. 313). WhatsApp messages between the parties confirm Evangeline's noncompliance and the various justifications she gave Byron. (R. 378-98).

The family court conducted a hearing on Byron's motion to hold Evangeline in contempt on July 29, 2024. Evangeline was represented by counsel at the hearing. She argued T.N.'s lack of cooperation was the primary cause of her tardiness and no-shows. Evangeline also repeatedly argued any parenting time Byron missed resulting from her noncompliance could be made up, even after the family court stated the amount of time missed was not relevant, and that it was

instead "just a matter of principle and trying to get somebody to follow the court order." (Video Record (VR) 7/29/24 at 3:13:50).

July 29 was a Monday. That same weekend, Evangeline was a no-show to exchange T.N. and, on August 6, Bryon filed yet another motion to hold Evangeline in contempt for not following the parenting schedule. (R. 467). Evangeline filed a *pro se* response. She alleged Byron tore T.N.'s fingernail off and hit him with an umbrella and that she had taken T.N. to the emergency room. She claimed she denied Byron his parenting time because of what a medical provider and child protective services (CPS) told her. (R. 471).

The court conducted a hearing on the motion on August 12. Evangeline was once again represented by counsel. At the hearing, T.N.'s guardian *ad litem* (GAL) took the position Evangeline is "routinely using CPS in order to prevent [Byron] from having the visits, so every time he is to have a visit, he does get a phone call [from CPS]." (VR 8/12/24 at 12:03:20). She also said she talked to both T.N. and child protective services, and she had "no concerns . . . that [T.N.] is being harmed at [Byron's] house." (VR 8/12/24 at 12:03:40). The GAL was candid with the court: "I do think it's just a matter of just willful disregard for your court orders at this point." (VR 8/12/24 at 12:03:50).

This prompted the family court to share its concerns with Evangeline's counsel:

> Obviously, you've gotten into this case more recently, but I will tell you, this has been a pattern. And so, hopefully, maybe you can talk to your client and help her to understand . . . she's creating some serious concerns for the court by her pattern of behavior, in not following the court orders, circumventing the court orders, creating false concerns with child protective services, and it has been an ongoing pattern.

(VR 8/12/24 at 12:04:00). Nonetheless, the family court declined to set a contempt hearing, noting that Evangeline did take T.N. to the hospital, but reminded Evangeline she "needs to follow that court ordered schedule. It's just been a pattern." (VR 8/12/24 at 12:06:40).

The family court subsequently ruled on Byron's first contempt motion, finding Evangeline in contempt based on the instances of noncompliance from January to March. (R. 566). The family court rejected Evangeline's justifications, namely T.N.'s purported resistance and that on various days Evangeline "did not feel well," stating that it "did not find Evangeline's testimony credible" and that it did "not find Evangeline's justifications sincere." (R. 567). Having found Evangeline in contempt, the family court imposed only a minor sanction: one additional weekend of parenting time for Byron.

This appeal followed.

Within the burden-shifting framework of civil contempt, once a presumption of contempt arises, it may be rebutted if "the alleged contemnor [shows], clearly and convincingly, that he or she was unable to comply with the

-4-

court's order or was, for some other reason, justified in not complying."

*Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324,

332 (Ky. 2011). If the alleged contemnor successfully rebuts the presumption, "the

trial court must make its determination from the totality of the evidence, with the

ultimate burden of persuasion on the movant." *Id.* A trial court's disposition of a

contempt motion is tested for an abuse of discretion. *Meyers v. Petrie*, 233 S.W.3d

212, 215 (Ky. App. 2007). "The test for abuse of discretion is whether the trial

[court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound

legal principles." *Id.* (citations omitted).

The record is clear as to various instances of Evangeline's

noncompliance with the parenting schedule from January to March 2024, as

illustrated by the WhatsApp messages between the parties. And because the record

is clear as to her noncompliance, Evangeline could only avoid a finding of

contempt by showing, "clearly and convincingly, that . . . she was unable to

comply with the court's order or was, for some other reason, justified in not

complying." *Ivy*, 353 S.W.3d at 332. The family court did not abuse its discretion

in determining Evangeline failed to carry her burden.

Evangeline's *pro se* brief repeats arguments she made before the

family court, though it largely addresses matters outside the scope of our review –

a review limited to the family court's finding of contempt.[1]  In his first contempt motion, Byron identified nine instances of noncompliance in a span of approximately two-months.  The frequency of Evangeline's noncompliance undercuts the believability she was always acting in good faith, particularly given her previous contempt for noncompliance with the parenting schedule, as well as the position taken by the GAL in this matter.  Heavy traffic or needing to "stop and get gas" (Appellant's Brief 5) might explain an isolated instance of tardiness.  But they do not "clearly and convincingly" explain habitual noncompliance.

Nor was the family court "arbitrary, unreasonable, [or] unfair" in finding Evangeline lacked credibility and sincerity in justifying her noncompliance based on her frequent claims of "not feeling well" and T.N.'s alleged lack of cooperation.  The family court cited Evangeline's "history" with the court in finding her justifications lacked credibility and sincerity.  (R. 567).  And the GAL took a position Evangeline has repeatedly fabricated concerns with CPS and has shown "willful disregard" of the parenting schedule.  The family court's finding of contempt is amply supported by the record.

---

[1] Among other things, Evangeline accuses both the family court judge and the GAL of bias. (Appellant's Brief 6).  Evangeline previously attempted to appeal the family court's denial of her motion to recuse.  We ordered Evangeline to show cause why her appeal should not be dismissed as interlocutory.  (Order Directing Appellant to Show Cause, entered February 14, 2024 in No. 2024-CA-0164-MR).  Evangeline filed a response, but we found insufficient cause and dismissed her appeal because orders denying recusal are "inherently interlocutory."  (Order Dismissing, entered May 6, 2024 in No. 2024-CA-0164-MR).

While Evangeline's brief does not successfully argue reversible error, her brief does, perhaps, reflect the troubling mindset that has led us here. For instance, Evangeline asserts she was not in contempt because if she "was late or had to change the schedule, [Byron] was allowed to make up all his parenting time." (Appellant's Br. 4). But Evangeline has no authority to "change the schedule," and Byron is not "allowed" or "disallowed" to exercise his parenting time at Evangeline's convenience. Absent an explicit agreement with Byron to alter the parenting schedule, Evangeline is bound to follow it. Court orders are not mere suggestions, and Evangeline does not have any discretion or leeway to deviate from the parenting schedule. If the parenting schedule requires Evangeline to exchange T.N. at 6:00 PM, and Evangeline needs to get gas first, she needs to leave early enough to get gas and still arrive by 6:00 PM.

Byron should not have to engage in lengthy debates to exercise his parenting time, and Byron should not receive a barrage of antagonistic messages from Evangeline for refusing to agree to alter the parenting schedule. For instance, when Byron was met with yet another round of Evangeline's excuses on March 6, he responded: "You run late every week when you do come[.] [I]t's every single week. Don't send me all of these messages, just be here like you're supposed to be here every week at 6:00." (R. 390). Our review of the record supports, explains, and justifies Byron's exasperation.

We urge Evangeline to take a different tack and comply with the family court's orders. If she fails to heed our urging, it remains with the family court which is invested with broad authority to "enforce its own judgments and remove any obstructions to such enforcement," including invoking its "contempt power in enforcing a judgment." *Akers v. Stephenson*, 469 S.W.2d 704, 706 (Ky. 1970). Civil contempt may include "[c]oercive sanctions, such as daily fines or incarceration[.]" *Ivy*, 353 S.W.3d at 334. It is our hope the family court need not resort to such drastic measures.

Based on the foregoing, we affirm the Jefferson Circuit Court, Family Division's September 5, 2024 Order of Contempt.


ALL CONCUR.


BRIEF FOR APPELLANT:                   NO BRIEF FOR APPELLEE.

Evangeline Newton, *pro se*
Louisville, Kentucky